## Render v. City of Louisville, et al.

(Decided February 22, 1911.)

## Appeal from Jefferson Circuit Court (First Chancery Division).

1.  Legislative Act—Not Required to Have Provision of Constitution Incorporated—Sufficient if not in Conflict.With.—It is not required that an act of the legislature shall have incorporated in it any provision of the Constitution bearing on the matter therein made the subject of legislation; it is sufficient that it does not in terms or meaning conflict with any provision of the Constitution, and in determining whether the act conforms to that instrument it is to be tested by and in the light of its provisions.

2.  Municipality—Incurring Indebtedness—Constitutional Provision—Meaning of Provision—Assent of Two-thirds of Those Voting.—The meaning of section 157 of the Constitution is that the assent of two-thirds of the electors whose votes are cast on the question of incurring the indebtedness, is all that is necessary; otherwise, the Constitution would have required the legislatuie to indicate by statutory enactment some means of ascertaining the entire number of legal voters in the municipality.

3.  Hospital Commissioners—Appointment Equally From Democratic and Republican Parties—Not Violative of Bill of Rights.—The act of the legislature in providing that two of the members of the hospital commissioners shall be appointed by the mayor from the Democratic, and two from the Republican party, is not violative of section 3 (Bill of Rights) of the Constitution. Such provision is designed to secure in the action of the board impartiality and freedom from political bias and violates no provision of the Constitution. The Democratic and Republican parties are the two dominant parties in the city of Louisville, and in the State, but if in the future other political parties should get in the ascendency, it would do no violence to the meaning of the statute, to the rights of the city, or to the holders of the hospital bonds, for the mayor to appoint the members of the commission equally from the two leading, or dominant political parties, whatever may be the names under which such parties exist.

TRABUE, DOOLAN & COX for appellant.

CLAYTON B. BLAKEY and HUSTON QUIN for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This action was instituted in the court below by appellant, a taxpayer of the city of Louisville, against the appellees, city of Louisville, its mayor and the persons composing the commissioners of hospital of the city

of Louisville, to enjoin the issuance by the city of $1,000,-000 of bonds for use in erecting and furnishing a city hospital.

The city of Louisville claims the right to issue the bonds under authority conferred by an act of the General Assembly of the Commonwealth of Kentucky, approved March 14th, 1910, entitled "An act to enable cities of the first class to construct a public hospital;" which provides that in order to obtain money for the construction and furnishing of such hospital, the general council of a first class city may adopt an ordinance submitting to the voters thereof, at the November election, 1910, the question of whether the bonds of the city should be issued for that purpose; and that such ordinance should specify the total number and amount of the bonds to be issued, not exceeding $1,000,000, the date and maturity thereof, the rate of interest they should bear and how payable. Also that the ordinance should contain the necessary details in reference to the execution and delivery of the bonds, their denomination, interest coupons to be attached, tax to be levied to pay the interest thereon, and create a sinking fund to retire the bonds at maturity.

The act empowers the mayor of a city of the first class, having in contemplation the issuance of bonds for the construction of a hospital, to appoint four persons—two from the Democratic party and two from the Republican party—who with the mayor as an ex-officio member, shall constitute the commissioners of hospital of such city, with capacity as such to contract and be contracted with, sue and be sued; and provides that to these commissioners shall be entrusted the control of the work of constructing and maintaining the hospital; also the duty of fixing the price of the bonds, selling the same and receiving the proceeds; but with the proviso that none of them shall be sold for less than par and that any premium obtained from their sale shall constitute a part of the sinking fund for their ultimate retirement.

It appears from the averments of the petition that the general council of the city of Louisville, pursuant to the authority conferred upon it by the act mentioned, adopted such an ordinance with respect to the holding of the required election, issuance of bonds and other steps, as is by the act prescribed; and that the mayor duly appointed, with the approval of the general council, the four persons, two from each of the parties named, who are to act as commissioners of hospital. It

further appears that after due notice the question of whether $1,000,000, of bonds maturing 40 years after date, bearing interest at the rate of 4 1-2 per cent. per annum, payable semi-annually, should be issued by the city of Louisville for the purpose of constructing and furnishing a public hospital, was, as directed by the act and ordinance mentioned, submitted to the qualified voters of the city at the November election, 1910, and that at such election two-thirds of the qualified voters, voting upon the proposition, voted for the issuance of the bonds; that is to say of 15,942 votes cast thereon, 11,892 were cast in favor of the issuance of the bonds and 4,050 in opposition thereto.

It further appears from the averments of the petition that the appellee, city of Louisville, is now ready to issue and place in the hands of its commissioners of hospital, for sale upon the market, the bonds for the construction of the hospital, but that appellant objected in the circuit court to its doing so on the grounds, as alleged, that the act providing for the issuance and sale of the bonds is unconstitutional and the ordinance adopted in pursuance thereof invalid. Appellees filed a joint demurrer to the petition, which the circuit court sustained and appellant failing to plead further, judgment was entered refusing the injunction asked and dismissing the petition, and from that judgment he has appealed.

The constitutionality of the act of the Legislature authorizing the bond issue in question is assailed in the brief of appellant's counsel upon two grounds: "1st. That in providing for the issuance of the bonds, if the voters of the city shall determine that such bonds shall be issued (section 10 of the act), the Legislature failed to comply with a provision of section 157 of the Constitution of Kentucky, which requires the affirmative vote of two-thirds of the voters before bonds can be issued under such circumstances. 2nd. That the act (section 1) in requiring that two of the members of the hospital commission shall be members of the Democratic party and two members of the Republican party, is in conflict with and repugnant to section 3 of the Constitution of Kentucky."

So much of section 157 of the Constitution as bears on the question under consideration provides as follows:

"No county, city, town, taxing district, or other municipality shall be authorized or permitted to become in-

debted, in any manner or for any purpose, to an amount exceeding in any year, an income or revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void.''

It was not necessary that the act should embody the provisions of section 157 of the Constitution referred to or words of similar import, in order to make valid the election held in the city of Louisville to determine whether the bonds should be issued, or to make valid the issuance of the bonds following such election. It is not required that an act of the Legislature shall have incorporated in it any provision of the Constitution bearing on the matter therein made the subject of legislation; it is sufficient that it does not in terms or meaning conflict with any provision of the Constitution, and in determining whether the act conforms to that instrument it is to be tested by and in the light of its provisions.

In the case of Board of Education of Winchester v. City of Winchester, 120 Ky., 594, objection was made that an act of the Legislature, under which an election had been held authorizing the issue and sale of bonds by the city of Winchester for the erection of a school building, was in conflict with section 157 of the Constitution; in refusing to sustain the objection we said:

''Every provision of the Constitution is mandatory. When it is provided that an indebtedness to a certain amount shall not be incurred without the assent of two-thirds of the electors voting at an election to be held for that purpose, it necessarily follows from the constitutional provision that such an indebtedness may be incurred with the assent of two-thirds of the voters. The Legislature can neither subtract from nor add to the constitutional requirement. The constitutional provision regulates the subject, and removes it from legislative control.'' Cooley, Const. Limitations, page 64.

It is proper to add in this connection that we also held in the case, supra, that the meaning of section 157 of the Constitution is, that the assent of two-thirds of the electors whose votes are cast on the question of incurring the indebtedness, is all that is necessary; otherwise the section of the Constitution, supra, would have required the Legislature to indicate by statutory enactment some means of ascertaining the entire number of legal voters in the municipality. (Montgomery County Court v.

Trimble, 104 Ky., 629; Tipton, et al. v. City of Shelbyville, et al., 32 R., 1123.)

Section 5 of the ordinance adopted by the general council of the city provides that: "None of the bonds shall be prepared or issued unless at said election two-thirds of those voting on the said question shall vote in favor of the issuance of said bonds." While this provision of the ordinance would not have cured the omission from the act of the Legislature of a like provision, if its insertion therein had been necessary to its constitutionality, its presence in the ordinance shows that the general council knew that two-thirds of the votes cast at the election must favor the issuance of the bonds to authorize their issuance; and also that the publication of the ordinance would inform the voters of the city of that fact and prevent any misapprehension as to the vote required to carry or defeat the proposition.

It is not apparent that any reason exists for our holding either that the act or ordinance under consideration violates section 157 of the Constitution.

We now come to the consideration of appellant's second and final contention which is, as previously stated, that section 1 of the act in question in providing that two of the commissioners of hospital shall be appointed by the mayor from the Democratic party, and two from the Republican party, violates section 3 (Bill of Rights) of the Constitution, which declares:

"All men, when they form a social compact, are equal; and no grant of exclusive, separate public emoluments, or privileges shall be made to any man or set of men, except in consideration of public services; but no property shall be exempt from taxation except as provided in this Constitution; and every grant of a franchise, privilege or exemption, shall remain subject to revocation, alteration or amendment."

As well argued by counsel for appellees and conceded by counsel for appellant, if the act should be held unconstitutional for the reason last urged, then upon the same ground could the provisions of the present election law with respect to the appointment of the State Board of Election Commissioners and precinct election officers, be held unconstitutional; for they are selected equally from the two political parties that polled the largest vote at the last preceding election for State officers or presidential electors, which were the Democratic and Republican parties. But in the case of Herndon v. Farmer, 114 Ky.,

200, we held the statute of 1898 and that of 1900, both relating to the subject of elections, constitutional.

In the case of Miller, et al. v. City of Louisville, et al., 30 R., 664, we had before us for consideration the constitutionality of a statute authorizing cities of the first class to submit to the voters thereof the question whether bonds should be issued for the raising of money to construct sewers. The first section of the act provided, as does the act now under consideration, that the mayor of such cities should appoint four persons who, with the mayor as a member ex officio, should constitute a sewerage commission; two of the appointees to be members of the Democratic party and two members of the Republican party. (Section 3037b, Kentucky Statutes.) In our opinion the statute was not open to the objections made to it and its constitutionality was upheld. It is true objection was not specifically made to that part of it which provided for the appointment by the mayor of a bi-partisan board of sewerage commissioners, but as the entire statute was before us and its constitutionality was assailed upon various grounds, the fact that we did not in the opinion discuss the provisions with respect to the personnel of the sewerage commission, gives some force to the argument of counsel that we found no reason for holding it unconstitutional because of those provisions.

It is stated in the written opinion of the judge of the circuit court, and not denied by appellant's counsel, that the question of the city of Louisville issuing bonds for sewerage purposes, was twice defeated by the voters of that city, and that the necessary two-thirds majority was not obtained until the statute was so amended as to allow the appointment of a bi-partisan commission; following which the third election was held resulting in a majority in favor of the bond issue of more than two-thirds of the votes cast.

It may be that the benefits arising from the control by a bi-partisan commission of the sewerage system of Louisville, influenced many of the votes cast for the issuance of the hospital bonds; but whether so or not, we are unable to see that the provisions of the act authorizing the appointment, by the mayor, of the hospital commission from the two leading political parties will violate the Constitution, or prove disastrous to the interests of the city of Louisville.

It is urged against this feature of the act that it requires a political test as a qualification for office and creates special privileges in contravention of the Constitution. In our opinion the constitutional provision referred to does not apply to legislative enactments fixing the qualifications for membership on a municipal board of commissioners. The requirement that the commissioners be equally selected from the two political parties imposes no constitutional restriction upon them, nor does it add any new qualification not allowed by the Constitution; and as the commission is not a permanent body its members do not hold their places to the exclusion of all others. It is true that an elector who does not ally himself with the Democratic or Republican party can not be appointed to membership on the board, but there is no such thing as the right to hold office; and if the language of the act had been that the commission should be composed of two members from each of the two leading or dominant political parties in the city or state, the appointees would nevertheless have to be selected equally from the Democratic and Republican parties. No elector of the city is deprived by the act of any privilege so far as voting is concerned, as the members of the hospital commission are appointed by the mayor, not elected by the voters. The latter may, however, vote for the mayor, who holds and exercises the power to appoint the hospital commissioners, and in that way they have a voice indirectly in the appointment of the commissioners.

It is very common for legislatures, in creating municipal boards and commissions, to provide that the members thereof shall not all be of the same political faith, and to direct that they shall be selected from the dominant political parties. There can be no valid objection to the right of the Legislature to fix the qualifications of the members of such boards, or to provide that they shall be appointed from the two principal political parties. It is designed to secure in the action of the board, impartiality and freedom from political bias and violates no provision of the Constitution; moreover it is the province of the Legislature to determine whether such a requirement is wise.

It is apparent that the Democratic and Republican parties were named in the act as the parties from which to appoint the members of the hospital commission, because they are, and for many years have been, the domi-

nant political parties in the city of Louisville and in the State. But if in the future other political parties should get in ascendency, it would do no violence to the meaning of the statute, to the rights of the city or the holders of the hospital bonds, for the mayor to appoint the members of the hospital commission equally from the two leading or dominant political parties, whatever may be the names under which such parties exist.

Our attention has been called to a number of authorities cited in the briefs of counsel, some of which differ radically from the conclusions we have reached in the case at bar. Among these are the cases of State, ex rel Holt v. Denny, 118 Ind., 449; Evansville v. State, 118 Ind., 446; State ex rel Geake v. Fox, 158 Ind., 126; People ex rel Leroy v. Hulbert, 24 Mich., 44; Attorney General v. Detroit, 58 Mich., 213. All these cases involved statutes, in some respects like the one under consideration, which were held unconstitutional, and at least two of them were so held as violative of provisions similar to those contained in section 3 of our Constitution. This is notably true of Attorney General v. Detroit, supra.

We find, however, among the authorities cited the following which seem in harmony with the views we have expressed. Churchill v. Bemie, 45 Neb., 724; People ex rel Grinnell v. Hoffman, 116 Ill., 586; Patterson v. Barlow, 60 Pa., 80; Iowa v. Jones, 27 L. R. A. (new Ed.), 719. The opinion of the majority of the court in the case last cited, very ably and exhaustively discusses the question raised by appellant's second contention in this case and sustains the constitutionality of a statute substantially like the one before us. Its logic satisfies us of the correctness of the conclusion at which we have arrived.

Finding no error in the judgment of the circuit court it is hereby affirmed.

Whole court sitting.