## Walsh, et al. v. Asher, Judge, et al.

(Decided March 5, 1915.)

### Appeal from Bell Circuit Court.

1. Elections—Submission of Question as to Issue of Road Bonds— When Election May Be Held.—Under the constitutional amendment submitted by the Legislature of 1908, authorizing the submission to the voters of the several counties the question whether the fiscal court might issue bonds for road purposes, and under

the Act of 1914, such elections may be held on a day other than a regular election day.

2. Elections—Question as to Issue of Road Bonds—Petition for Election.—Under the Act of 1914 it is not necessary that the petition provided for therein shall lie over from one term of a county court to another before the court is authorized to call the election.

3. Elections—Issue of Road Bonds—Submission to Voters.—It is sufficient to follow the form of submission prescribed by tne Act; and it is not necessary to the validity of the election that the voters should pass upon when the proposed bonds shall mature or the rate of interest they shall bear, it being the legislative purpose to leave to the discretion of the fiscal courts the arranging of such details as are not in conflict with the Act. Even if the Act undertook to exempt the proposed bonds from taxation it could not affect their validity.

PATTERSON & INGRAM for appellants.

CHARLES I. DAWSON for appellees.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

Appellant, suing for himself and other taxpayers of Bell County, is seeking in this action to enjoin the fiscal court of that county from issuing $250,000 in bonds, which the court is claiming the right to do under the terms of an amendment to the Constitution provided for in 1908 by an Act of the General Assembly, which amendment was thereafter duly adopted and proclaimed, and under an election held in Bell County on the 13th of February, 1915, as authorized by that amendment, and by the Act of the General Assembly in 1914.

The lower court sustained a demurrer to the petition and, appellant declining to plead further, the petition was dismissed, and he appeals.

In his petition, and in the brief of his counsel, four reasons are assigned why the election held on the 13th of February, 1915, and the proposed bond issue thereunder, are invalid, to-wit:

1. Because the election was held on a day other than the regular election day.

2. Because the election was called on the same day the petition provided for in the Act of 1914 was filed.

3. Because in the submission of the question the electors were not given an opportunity to pass on the length of time the proposed bonds were to run or the rate of interest they were to bear.

4. Because, by the terms of the Act of 1914, the proposed bonds were exempt from all taxation.

These questions will be considered in the order named.

The constitutional amendment submitted to the people by the legislative Act of March 21st, 1908, and which was subsequently adopted in the manner required, provides:

"The credit of the Commonwealth may be given, pledged or loaned to any county of the Commonwealth for public road purposes, and any county may be permitted to incur an indebtedness in any amount fixed by the county, not in excess of five per centum of the value of the taxable property therein, for public road purposes in said county, provided said additional indebtedness is submitted to the voters of the county for their ratification or rejection at a special election held for said purpose, in such manner as may be provided by law."

Section 21 of the Act of 1914, among other things, provides:

"Before the bonds authorized under this Act shall be issued the county court of the county, upon the petition of one hundred and fifty legal voters, who are freeholders of the county, shall, at the regular term thereof, after receiving said petition, make an order on his order book directing an election to be held in said county on some day named in said petition not earlier than sixty days after said application is lodged with the judge of said court."

The provision in the constitutional amendment that the question of additional indebtedness shall be "submitted to the voters of the county for their ratification or rejection at a special election held for said purpose in such manner as may be provided by law" is a distinct and unequivocal provision for a special election to be held at such time as may be fixed by the General Assembly, and the language is not susceptible of any other interpretation. The Legislature having this power has seen proper to delegate the same to the county courts of the several counties by providing that they should, after receiving the petition of the freeholders therein provided for, make an order "directing an election to be held in said county on some day named in said petition not earlier than sixty days after said application is lodged."

The constitutional amendment plainly left to the discretion of the General Assembly the time of holding the road bond elections, and the Legislature exercised that discretion by delegating to the several county courts the power to hold the same upon any day, provided only it was sixty days after the filing of the petition.

The cases of Morgan v. Goode, 151 Ky., 284, and Walker v. Goode, 153 Ky., 795, were cases involving the validity of an election to locate the county seat of a recently created county, and this court held that, under the provisions of Sections 147 and 148 of the Constitution, such an election, although a special election, could only be held upon a regular election day. But in this case we have a special constitutional amendment applicable to special elections to create indebtedness for road purposes only, with a distinct provision therein that such special elections held for such purposes shall be held in such manner as may be provided by law; and we have that provision of law authorizing the holding of such elections at times other than the regular election.

The second objection is that the election having been called on the same day, but after the filing of the petition by the freeholders, is contrary to the language and spirit of the act which contemplated, as argued, that the petition should lie over from one term of the county court to another before the court was authorized to call the election. But this contention is likewise contrary to the very terms of the Act; it is expressly provided that the county court shall "at the regular term thereof, after receiving said petition, make an order on his order book directing an election to be held in said county." There is nothing in the Act suggestive of the idea that it was in the legislative mind to require this petition to lie over from one term to another, and that such was not its purpose is apparent from the difference in the language used in providing for road bond elections and that used in the statutes providing for local option elections.

In providing for the holding of local option elections it is directed that "it shall be the duty of the judge of the county court in such county at the next regular term thereof, after receiving said petition, to make an order on his order book, &c."

The difference in the language used in the two acts is too apparent to call for discussion.

The next objection is that, while the submission was in the form prescribed by the statute, it gave no opportunity to the voters of the county to pass upon or suggest when the proposed bonds should mature or what rate of interest they should bear.

It is sufficient answer to this that the Legislature itself, in the act authorizing the holding of the election, provided that the bonds should not mature in less than five nor more than thirty years, and that they should be redeemable within the latter period at the pleasure of the court, and fixed the maximum rate of interest at five per cent. It was manifestly the legislative purpose to leave to the discretion of the fiscal court the arranging of such other details as are not in conflict with the act.

It is further suggested that the act undertakes to relieve the bonds for road purposes from taxation and is, therefore, in contravention of Section 170 of the Constitution; but whether this is or is not true cannot affect the validity of the bonds. If the act undertook to make them exempt from taxation, and the bonds upon their face so provided, it would not and could not affect their validity.

The lower court properly sustained the demurrer to the plaintiff's petition and the judgment is affirmed.