## Hughes v. Eison, et al.

(Decided January 11, 1921.)

### Appeal from Livingston Circuit Court.

1. Counties—Indebtedness for Road and Bridge Purposes.—While a tax for road purposes can not be levied under section 4307, Ky. Stats., until there is an indebtedness requiring the raising of revenue for such purposes, such indebtedness is incurred within the meaning of the statute when the fiscal court enters a proper or-

der for the improvement or construction of public highways or bridges in the county.

2. Counties—Recovery of Sheriff of Money for Road Purposes.— Taxpayers can not recover of the sheriff money paid in as tax for road purposes where there is a good faith purpose evidenced by proper orders of the fiscal court to undertake the improvement or construction of public highways.

3. Counties—Recovery of Money Paid as Tax for Road Purposes.— That money raised by a tax levy for road purposes is not used on the roads in the year for which it was intended, does not entitle the taxpayers to recover the same. If the road improvement or construction is unreasonably delayed a court of equity will, upon proper application, afford relief.

C. H. WILSON and J. R. WELLS for appellants.

CHAS. FERGUSON for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

On April 6th, 1918, the voters of Livingston county had submitted to them by the fiscal court of that county the following question: ''Will we vote a property tax in said county for the period of ten years at the rate of 20 cents on each one hundred dollars' worth of property in said county subject to local taxation, the same to be used and applied for the improvement and construction of public roads and bridges of this county?'' The proposition carried, and very soon thereafter the fiscal court entered an order levying a tax of 20 cents on the one hundred dollars' worth of property subject to taxation in Livingston county.

The sheriff, who is appellant herein, collected the tax for 1918, and also for 1919, amounting in the aggregate for the two years to more than sixteen thousand dollars. This proceeding in equity was commenced on August 12th, 1920, in the Livingston circuit court by C. R. Eison and Mrs. Lee A. Eison and the Commonwealth of Kentucky for the use and benefit of all the tax payers of Livingston county against E. F. Hughes, sheriff of that county, to recover all the money collected by the sheriff, under and by virtue of the special 20 cent road tax voted by the people. The answer of the sheriff relied for justification of the tax upon the authority granted by section 157a of the constitution of Kentucky, and the legislation had thereunder, which is section 4307b, Kentucky Statutes, but a general demurrer to the answer was sustained by the trial court, and the sheriff failing to plead further

judgment was entered for the plaintiffs, appellees here, directing the sheriff to turn over the entire fund of $16,263.47 to the master commissioner to be by him repaid to the taxpayers of the county, after certain costs and attorneys' fees were first paid out of it. The sheriff appeals.

The appellees, plaintiffs below, insist that an indebtedness on the part of the county at the time of the levy of the special road tax, if not at the time of the submission of the question to the voters, was a prerequisite to the right of the county to levy or collect such a tax under 157a of our constitution and section 4307b Kentucky Statutes, and it is admitted that the county of Livingston had no bonded indebtedness or other outstanding obligations, but on the contrary the county had a surplus in its road fund both before and at the time of the levy and collection of the special road tax sought to be recovered by the taxpayers. So if an existing indebtedness is a prerequisite to the right of the fiscal court to make such levy and collection, then the taxpayers are entitled to reclaim the money paid in by them, for no such indebtedness existed.

Section 157 of our constitution limits the tax rate of counties to 50 cents on the one hundred dollars' worth of taxable property of the county subject to local taxation, with the proviso that in case of necessity to enable the county to create a fund to pay the interest on and provide a sinking fund to extinguish an indebtedness existing at the time of the adoption of the present constitution such rate may be increased. It further provides that no county shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount in excess of the income and revenue of the county for that year, without the assent of two-thirds of the voters of the county voting at an election to be held for that purpose. Section 157a of our constitution is an amendment to our fundamental law, and was adopted by a vote of the people in 1909. Under it any county may be permitted to incur an indebtedness in any amount fixed by the county, not in excess of five per centum of the value of the taxable property therein, for public road purposes; provided said additional indebtedness is submitted to the voters of the county for their ratification or rejection at a special election held for that purpose, and when any such indebtedness is incurred by any county said county

may levy, in addition to the tax rate allowed under section 157 of the constitution, an amount not exceeding 20 cents on the one hundred dollars of assessed valuation of said county for the purpose of paying the interest on said indebtedness and providing a sinking fund for the payment of said indebtedness.

If there be a conflict between the terms of sections 157 and 157a of our constitution the latter, as we have written, must prevail. Gatton v. Fiscal Court, 169 Ky. 426.

So reading the two sections of the constitution together the tax rate of a county for all but school purposes, shall not exceed, at any time, fifty cents on the one hundred dollars, except a county may for public road purposes, and to meet a proposed indebtedness for that purpose levy, in addition to the rate allowed by section 157, an amount not to exceed 20 cents on the one hundred dollar valuation.

The maximum rate of taxation of a county as originally fixed by sec. 157 of our constitution contained only one exception to its limitations—schools. For school purposes a greater rate than fifty cents on the one hundred dollars' valuation of the property of the county was allowable. When we amended the constitution by adding section 157a we wrote into the exception in favor of schools in section 157 thereof, the word ''roads'' so that section as amended should be read ''The tax rate of . . . counties, for other than school and road purposes shall not at any time . . . exceed . . . fifty cents on the one hundred dollars of taxable property in the county.'' So read section 157a becomes, in effect, a part of 157 and there is no conflict. The amendment, sec. 157a, only enlarges and extends sec. 157. The provision in sec. 157a ''any county may be permitted to incur an indebtedness in any amount fixed by the county not in excess of five per centum of the value of the taxable property therein for public road purposes in said county, provided said additional indebtedness is submitted to the voters of the county for ratification or rejection at a special election held for said purpose,'' harmonizes perfectly with the provisions of section 157, when read as above suggested. It will be observed that section 157a requires the vote to be taken on the amount of the indebtedness to be incurred and not on the rate of taxation to be levied, while section 4307b of the statutes enacted in pursuance thereof required both the rate of taxation and the incurring of the indebtedness to be submitted to the voters for their

approval. This does not in any way affect the validity of the statute for it does not conflict with the constitutional requirements, but only goes one step farther and requires the fiscal court to take the people into its full confidence, and let them know the maximum rate of taxation which will be fixed, and the number of years it shall run, to meet the proposed indebtedness, and is a wise provision.

In the case of Collier v. Bourbon County Fiscal Court, 188 Ky. 490, we held section 4307b constitutional and valid.

The question submitted to the voters of Livingston county at the special election held April 6th, 1918, embraced both the right of the county to incur the indebtedness and to lay a levy of 20 cents on the one hundred dollars' valuation for a period of ten years, thus complying with the constitutional provision and the requirements of the statutes.

By the terms of 157 of the constitution no indebtedness in excess of the income and revenue of the county for the current year is authorized or permitted. The provision is not changed by the amendment — 157a, but is now in full force and effect. It will thus be seen that the amount of the indebtedness which a county may incur in any given year is limited and in the same measure controlled by the amount of its current income and revenue. As its income increases its indebtedness may increase. The increase of the latter is dependent upon the increase of the former.

A county could not, therefore, incur an indebtedness such as that proposed by Livingston county without submitting the proposition to the voters of the county for their approval or rejection. Hence it was, therefore, impossible for the county of Livingston to have had an existing indebtedness of the nature proposed, at the time of the special election or at any time before its income and revenue had been so augmented as to allow such increase in indebtedness, otherwise a vote would not be necessary. An indebtedness otherwise incurred would, according to the plain terms of section 157 of the constitution, have been void and unenforceable by the creditors of the county, which would be in effect no indebtedness at all. Thus, those who insist that a pre-existing indebtedness is necessary to give the right to lay such tax, reason in a circle. We, therefore, conclude that the indebtedness contemplated by the constitution and statute to authorize the

levy and collection of the tax, is such as the county or its fiscal agents may in good faith propose or contemplate and not an actual existing indebtedness. This construction of the statute 4307b and its sub-sections appears well nigh irresistible. To hold that the indebtedness must be existant at the time of the submission of the question of voting a special road tax would be to render the whole amendment to the constitution and the statute a nullity, because self destructive. As there can be no indebtedness under 157 in excess of the income of the county for the current year and the income can not be increased except by a special road tax vote it necessarily follows that no acutal existing indebtedness is required but only a good faith purpose to undertake and accomplish specified road and bridge construction or improvement, in order to warrant the submission of the question of whether a tax shall be levied and the levying of the tax if approved by the people. We so held in effect in the case of Collier v. Bourbon Fiscal Court, *supra.* For in that case the 20 cent tax levied for road purposes was divided into two funds; one of four cents to go to pay the interest on and create a sinking fund for the extinction of the bonded indebtedness of the county voted on the same day the 20 cent road tax was submitted to the people, the other 16 cents was set aside for the purpose of improving and constructing roads and bridges of that county, which was not in fact an existing indebtedness but only a good faith proposed indebtedness. It was held that the fund thus created could be held and spent by the county annually to build or improve its roads or bridges. The sixteen cents of the Bourbon county fund was in exactly the same attitude as the 20 cent road tax of Livingston county which is now before us.

It is not at all material that the fiscal court may have laid its regular levy for county purposes and set aside some of this for road purposes. The special road tax was intended to be and is supplemental of that fund.

When the fiscal court by proper order embarked on a program of road building and invoked state aid for that purpose as is prescribed by law, and designated certain roads for construction or improvement with the funds derived from the special road tax, the requisite of indebtedness was fulfilled. The funds so raised can not be appropriated to any other use than that for which they were voted, and if the fiscal court should attempt so to do, a

court of equity will grant such injunctive remedy as will prevent the diversion of the funds.

For these reasons the demurrer to the answer of the sheriff should have been overruled.

The judgment is therefore reversed for proceedings consistent with the views herein expressed.